**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA

v.                                                          No. 4:01CR00142 JLH

JASON JERREL AUSLER

**OPINION**

Jason Jerrel Ausler was convicted on two counts of possession of controlled substances with intent to deliver. On Count 1 he was convicted of possession with intent to distribute a mixture or substance containing cocaine hydrochloride. The jury found that the quantity of the mixture or substance containing cocaine hydrochloride was more than 5 kilograms. On Count 2 he was convicted of possession with intent to distribute a mixture or substance containing cocaine base, otherwise known as crack cocaine. The jury found that the quantity of the mixture or substance containing cocaine base was 5 grams or more but less than 50 grams. Ausler was determined to be a career offender. His guidelines sentencing range was 360 months to life. The Honorable Stephen M. Reasoner[1] sentenced him to a term of 480 months imprisonment on Counts 1 and 2 to run concurrently; 10 years supervise release; $20,000 community restitution; $20,000 fine; and $200 special assessment.

Ausler appealed his conviction on Count 2, arguing that there was insufficient evidence that he knowingly possessed crack cocaine. The Eighth Circuit affirmed. *See United States v. Ausler*, 395 F.3d 918 (8th Cir. 2005). Ausler raised no issue on direct appeal other than the sufficiency of the evidence with respect to Count 2.

---

[1] This case was assigned to the undersigned judge following Judge Reasoner's death.

After the Eighth Circuit affirmed on direct appeal, Ausler filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255.  Ausler requested that the Court appoint counsel to represent him in the § 2255 proceedings, and the Court appointed appellate counsel for the Federal Public Defender's Office, Omar F. Greene.[2]  On Ausler's behalf, Greene has asserted and briefed the following claims: (1) an improperly hasty determination was made regarding the defendant's desire to proceed pro se; (2) the defendant's right to represent himself was not honored; (3) the defendant was entitled to conflict-free counsel; (4) trial counsel was ineffective for failing to make a suppression motion and for failing to raise certain discovery issues; and (5) important constitutional issues regarding *Blakely* and *Booker* apply to this case.  In addition to the claims that Greene has asserted and briefed, Ausler raises pro se 13 separate issues, all of which have been considered by the Court.

For the reasons stated below, Ausler's petition is DENIED.

**I.**

Ausler's first three points are interrelated and will be discussed together.

Before trial, Ausler's court-appointed lawyer, Mark Alan Jesse, filed a motion styled, "Motion for Conflict of Interest Determination."  That motion recited:

> Subsequent to the court appointing counsel to represent the Defendant, the Defendant has served counsel by registered mail, return receipt requested, with certain notices of publication and self executing security agreements, claiming a "common law copyright" in the use of his given name, and claiming that further usage of his name constitutes a violation subjecting counsel to penalties and damage awards.

The motion further stated, "To the extent counsel might be required to file any motion, might be required to defend himself against the claims of the Defendant, or in any other manner take an

---

[2] The Court wishes to thank Mr. Greene for his service in this case.

adversarial position to that of the client, a conflict of interest may exist." The motion requested a hearing to determine whether a conflict of interest existed that would preclude further representation by the attorney.

A hearing was held before The Honorable Judge Henry L. Jones, Jr., Magistrate Judge for the Eastern District of Arkansas. At that hearing, when Ausler's name was mentioned, he invoked his "common law copyright," insisting that he be addressed as "secured party," and asserting that the person using his name, whether his own counsel or the Court, did not have permission to use his private property. There was a discussion as to whether Ausler qualified for a court-appointed lawyer, and Jesse stated that Ausler refused to execute an affidavit, but it appeared to him that Ausler did qualify for appointment of counsel. The Court at one point requested Ausler to state his position with respect to the issue raised by Jesse, and the following exchange occurred:

> THE DEFENDANT:  The name you just called is common-law copyright and I am the holder of the copyright, the secured party in all transactions concerning unauthorized use thereof.
>
> You may address me as secured party. The party you called the defendant, the party you call a person is a registered copyright and my copyrighted property. You do not now have nor have you ever had my permission to use my private property.
>
> You have been properly noticed of the fee for each unauthorized use of my property so I can interpret your actions in no other way than you want to do business. Repeated use after notification of fees to remove it from reversible error. You do not have my authorization to use my private property at any time without compensating me.
>
> If you want to withdraw from the consensual contract at this point in time and cease using my property in any manner and guarantee that none of your associates will likewise ever use my property again for any reason I will be amenable to forgiving all unauthorized use fees incurred heretofore; however, any instance of additional use of my property at any time by either you or any of your associates

confirms and executes the consensual contract and security agreement now in your possession concerning our business arrangement.

The terms of our consensual contract reflect everything I am saying here. The only reason I am here is to do business because you are holding the wrong party and holding him against his will. If you want to do business, then let's do business; otherwise, let's call off the whole thing right now and go home.

THE COURT: Is it your position that your attorney cannot use your name at all?

THE DEFENDANT: I have never been represented by counsel.[3]

THE COURT: All right. You do not wish to have appointed counsel?

THE DEFENDANT: Affidavit, original printed declaration of statement of facts made voluntarily and confirmed by the oath or affirmation of party making it, taken before an officer with authority to administer such oath. An affidavit is a written statement under oath executed and sworn to before an authorized officer on a maker's commercial liability that all assertions contained within the affidavit are true, correct and complete and not misleading the truth, the whole truth and nothing but the truth.

An affidavit is the most solemn, unequivocal and ceremonial means to the extent to express truth without evasion presuming deceptional sincerity as distinguished from testimony. An affidavit is not subject to cross examination. It's intended to be a complete self-contained document.

All truth is subjective and only each free will being possesses the right, duty, privilege, and capacity to affiant's own truth in accordance with unique maker's perspective and priorities of the affiant. No one has the authority nor the ability to respect the truth of another because truth is sovereign and truth is supreme in commerce.

An affidavit is the most important document commerce and stands as the truth unless rebutted point-for-point by counter affidavit signed and certified on the executing party's commercial liability as true, correct and complete, not misleading the truth, the whole truth and nothing but the truth to which no one has rebutted my affidavit as of the 14th day of the first month, the year of our Lord 2003 to which

---

[3] In fact, he had been represented by four different attorneys during the course of this proceeding.

4

verifies the supremacy and commerce at the truth, the whole truth and nothing but the truth so help me God.

      THE COURT:   Do you wish to have appointed counsel?

      THE DEFENDANT:   Since we are going forward with the use of my private --

      THE COURT:   Just a second.  Just a second.  Just a second, Mr. Ausler.

      THE DEFENDANT:   -- property without my authorization, we are now under --

      THE COURT:   Just a second.  Mr. Ausler, just a second.

      THE DEFENDANT:   -- contract and I demand to be paid, with or without your cooperation.

      THE COURT:   Mr. Ausler, do you wish to have appointed counsel?

      THE DEFENDANT:   And your only option is the law that allows sole means to private property and use it without compensating me in accordance with our agreement.  If you're having second thoughts about our agreement you can still do something about it while I am here, but once I walk through the door the deal is sealed.

      What do you want to do?

      THE COURT:   Do you wish to have appointed counsel or do you wish to proceed pro se?

      THE DEFENDANT:   Let the record show that there is no contract between me and him.  If this statement is true there is no reason for me being held here against my will and I request the order of the Court be released to me immediately what is it going to be, do we have an agreement or not?

      THE COURT:   Do you wish to be represented by Mr. Jesse?

      THE DEFENDANT:   I have never been represented by counsel, never, and I have an affidavit stating that fact --

      THE COURT:   Do you wish to proceed pro se?

THE DEFENDANT:  -- to which it was unrebutted --

THE COURT:  Then do you wish to --

THE DEFENDANT:  -- and this unrebutted affidavit stands supreme until reviewed point-by-point.

THE COURT:  Do you wish to represent yourself then?

THE DEFENDANT:  Myself, I am secured party in all transactions. The person that you're pursuing is not here. The person that you're pursuing, I'm a secured party and I have paperwork to prove it, signed and notarized coming from the Secretary of State in the Republic of Illinois and the Republic of Arkansas.

THE COURT:  Mr. Jesse, given the defendant's position, I'm not sure that there's any way you can represent him at this time. He apparently takes the position, at least I assume that his position is he wishes to proceed pro se. He indicates that the appointment for some reason is invalid. He has refused to deal with an affidavit to given us his financial situation.

I am, therefore, going to relieve you at this time and you have no further obligation in this case.

MR. JESSE:  Thank you.

THE COURT:  Now I'm not sure whether or not there's reason at some point -- wishes to act as standby counsel but we'll determine that at a later point.

MR. JESSE:  Your Honor, I would be willing to act as standby counsel to the extent he wants to represent himself pro se.

THE DEFENDANT:  Let the record show --

THE COURT:  All right. At this point why don't -- I'll make the determination that you will serve --

THE DEFENDANT:  Let the record show --

THE COURT:  -- at least at this point as standby counsel.

Near the conclusion of this hearing, the government moved for a mental evaluation, and Jesse concurred in that motion. The Court referred Ausler for a mental evaluation, which determined that he was competent to stand trial.

At trial Ausler continued to respond to every statement using his name and every question by invoking his common-law copyright. The proceedings began as follows:

> THE COURT:   All right.  Before we bring the jury up, I wanted to go over a few items.
>
> Now, it is my understanding, Mr. Ausler, that you intend to represent yourself in this case.  Is that correct?
>
> THE DEFENDANT:   The name you just called me is common law copyrighted, and I am holder of that copyright, thus secured party in all transactions --
>
> THE COURT:   Mr. Ausler, whether you copyrighted your name or not, in this action where you are a party, you will be referred to as "Mr. Ausler."  If you refuse to respond to the Court or to an attorney, that will be considered disruptive behavior.  And you are not allowed to continue disruptive behavior in this court and remain in the courtroom.  I have had occasions in the past to remove disruptive defendants from the courtroom and continue the trial without them, letting, in this case, Mr. Jesse take over.  And that's what will happen.
>
> So let me begin again.  It is my understanding, Mr. Ausler, that you wish to represent yourself in this case.  Is that correct?
>
> THE DEFENDANT:  The name you just called is common law copyrighted, and I am holder of that copyright, thus secured party in all transactions concerning unauthorized use thereof.  You may address me as "secured party."
>
> THE COURT:   I'm going to give you one more warning, Mr. Ausler.  It is my understanding, Mr. Ausler, that you wish to represent yourself in this case.  Is that correct?
>
> THE DEFENDANT:   The name you just called me is common law copyrighted, and I am holder of that copyright, thus secured party in all transactions concerning unauthorized use thereof.  You may refer to me as "secured party."

THE COURT: Will you respond in this same way every time I ask you a question?

THE DEFENDANT: The party you called the "defendant," the party you called is the person that has a registered copyright. You do not now have, nor have you ever had my permission to use my private property. You have been properly noticed of the fees for each unauthorized use, so I can interpret your actions in no other way than you want to do business with me.

THE COURT: One other chance, Mr. Ausler. Are you going to respond to the Court in that manner every time you are addressed?

THE DEFENDANT: Repeated use after notification of fees removing from the realm of error, you do not have my authorization to use my property at any time without compensating me. If you want to withdraw from this consensual contract at this point in time and cease using my property in any manner and guarantee that none of your associates will likewise ever use my property again for any reason, I will be amenable to forgiving all unauthorized use fees incurred heretofore. However, any instance of additional use of my property at any time by either you or your associates confirms and executes consensual contract and security agreement now in your possession concerning our business arrangement.

THE COURT: I think you've made your point.

Mr. Jesse, it looks like you're going to have to take over this case. Have you got anything you wish to say? I am prepared now to have - - I am declaring Mr. Ausler as being disruptive, and he's indicated that he will be disruptive throughout the trial. I will have him removed until such time as he notifies the Court that he is prepared to abide by the rules of criminal procedures and the decorum of the court.

Do you have anything you wish to say in response?

MR. JESSE: No, Your Honor. I'm prepared to proceed.

THE COURT: Marshals, please remove Mr. Ausler. And let me know at any time that he's decided that he wants to participate in the process.

Since you are now counsel, let me ask you, before he is removed - - just a minute, Mr. Marshal. Do you want him present during voir dire or not?

MR. JESSE: If he can remain quiet, I have no problem with him being present throughout.

>THE COURT: All right.
>
>MR. JESSE: We could give it a try and see.
>
>THE COURT: That's not really my question. I, of course, have no objection at all to him remaining here if he'll remain quiet throughout and just let you try the case. But he's indicated to me he's not going to do that, and I can't get that commitment from him. But I'll try one more time.
>
>Mr. Ausler, if you remain here in the courtroom with Mr. Jesse conducting your defense, will you remain quiet, except when it is your turn to talk, and allow the court proceeding to proceed uninterrupted?
>
>THE DEFENDANT: Since you are proceeding forth with the unauthorized use of my property, you have only two options: One, to show me the law that allows you to take my private property without compensating me, or, two, until you pay me. If you do not understand those terms, we can get further into that.
>
>THE COURT: I take that answer as a "no."
>
>All right. Mr. Marshal, you may remove Mr. Ausler.
>
>Mr. Ausler, any time that you wish to change your attitude and return to the courtroom and act in an appropriate manner, just let the marshals know and they'll tell me.

Ausler was then removed from the courtroom during voir dire but was brought back to the courtroom after the jury was selected. He sat through the initial instructions, opening statement, and part of the direct examination of the first witness, who was one of the officers who had arrested him. The officer identified him and the prosecutor stated, "[M]ay the record reflect that Sergeant Turner has positively identified the defendant, Jason Jerrel Ausler?" At that point, Ausler again recited his claim to the common-law copyright. The Court stated to Ausler, "Now that you've made that explanation, let me request the defendant that we have heard it and it will not be necessary for you to continue to repeat it." Thereafter, Ausler sat quietly while his court-appointed lawyer tried the case until another of the arresting officers referred to him by name, at which point Ausler again

9

disrupted the proceedings by invoking his common-law copyright and continued to do so until the Court finally excused the jury and then directed the marshals to remove him from the courtroom. Ausler was not brought back into the courtroom until the jury was ready to announce its verdict, and then he was brought back so that he was in the courtroom at the return of the verdict.

Ausler first argues that the magistrate judge failed to engage him in the appropriate colloquy to determine whether he was knowingly and intelligently waiving his right to counsel before declaring that he would proceed pro se. Ausler cites *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 2534, 45 L. Ed. 2d 562 (1975); *Overton v. Mathes*, 425 F.3d 518, 519 (8th Cir. 2005); *Shaffer v. Bowersox*, 329 F.3d 637, 651-53 (8th Cir. 2003).

Here, as the transcript shows, the magistrate judge made a determined effort to engage Ausler in a colloquy, but Ausler steadfastly refused to participate, invoking his common-law copyright in response to every question and every comment. More importantly, as events unfolded, Ausler did not proceed pro se at trial. Whether the magistrate judge properly advised him of the dangers of proceeding pro se or not is irrelevant to his case because Ausler did not, in fact, represent himself at trial.

Ausler's second argument, in contrast to his first, is that his right to represent himself was not honored. He argues:

> If the magistrate judge properly interpreted Mr. Ausler's conduct as being a request to proceed *pro se*, the Court should have honored that right; yet, under circumstances that Mr. Ausler has reported to appointed habeas counsel, his *Faretta* right to self representation was not honored. Mr. Ausler has stated that the magistrate judge modified appointed trial counsel's role to one of standby counsel. However, afterward the prosecution did not provide Mr. Ausler with discovery materials and other materials that would have assisted him at trial. All these materials were sent to appointed standby counsel, who the Defendant has said did not provide these materials to him.

Ausler cites *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S. Ct. 944, 954, 79 L. Ed. 2d 122 (1984), and *United States v. Heine*, 920 F.2d 552, 554 (8th Cir. 1990), for the proposition that appointed standby counsel should not unduly interfere with a defendant's right to self-representation.

Assuming for the sake of argument that Ausler is correct in standing that the prosecution did not provide him with discovery but sent the discovery to Jesse, who did not provide the discovery to him, the record shows beyond doubt that these events did not prejudice Ausler's defense in any way. Ausler's conduct at trial required him to be removed from the courtroom, so he did not in fact represent himself at trial. Ausler's conduct created a situation in which it was necessary for Jesse to defend him at trial, and Jesse did so. Thus, the fact that discovery materials were provided to Jesse but not to Ausler did not interfere with Ausler's right of self-representation.

Next, Ausler argues that he was entitled to conflict-free counsel, citing *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978), *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), and *Wood v. Georgia*, 450 U.S. 261, 101 S. Ct. 1047, 67 L. Ed. 2d 220 (1981). He argues that prejudice is presumed where the defendant demonstrates that counsel (1) actually represented conflicting interests and (2) the conflict adversely effected his lawyer's performance. He argues that Jesse informed Judge Jones that a conflict of interest had developed between himself and Ausler, that Judge Jones relieved Jesse from further representation, but then Judge Jones erroneously appointed Jesse as standby counsel.

The record shows that Jesse notified the Court that he needed a determination as to whether he had a conflict of interest before he could proceed. In light of Ausler's allegations of a common-law copyright infringement, Jesse asked the Court to decide whether he had a conflict of interest. At the hearing, Judge Jones stated that Ausler's claim of a common-law copyright in his name

11

possessed "no legal significance." Because Ausler's claim possessed "no legal significance," it could not and did not place Jesse in a position of a conflict of interest. Ausler's claim of common-law copyright infringement was purely imaginary; it had no basis in reality. It did not disqualify Jesse from representing him in this proceeding, nor did it require that Judge Jones appoint some other lawyer to represent Ausler. So long as Ausler insisted on his imaginary claim that use of his name without his permission infringed his common-law copyright, any lawyer whom Judge Jones could have appointed to represent Ausler would have labored under the same difficulty as Jesse. If Ausler's arguments were accepted, it would mean that every lawyer was disqualified from representing him because his claim of common-law copyright infringement was directed at everyone who used his name, not just Jesse. Not only would it mean that no lawyer could represent him, it would also mean that he could not be tried, because he would and did assert his claim of common-law copyright infringement and disrupt the proceeding whenever his name was mentioned. The trial could not be conducted with Ausler in the courtroom, so he obviously could not represent himself; but he advances a theory that would mean that no lawyer could represent him because every lawyer would have a conflict of interest. To grant Ausler relief on any of his first three claims would require according some legal significance to his claim of common-law copyright infringement whenever his name was used, but that claim was and is wholly fictitious, without any foundation or basis in law. There was no possibility that Jesse could infringe any rights that Ausler had by using his name when defending him against criminal charges. A defendant cannot manufacture a conflict of interest by asserting a wholly fictitious claim that would, in effect, disqualify every lawyer from representing him, prevent the court and the prosecutor from using his name, and thereby bring the proceedings

against him to a halt. *Cf. Winfield v. Roper*, 460 F.3d 1026, 1040 (8th Cir. 2006) (defendant cannot bring malpractice suit against his attorney in attempt to manufacture a conflict of interest).

Jesse did not represent conflicting interests, nor did Ausler's assertion of a common-law copyright in his name affect Jesse's performance at trial. The Supreme Court has held that "the possibility of conflict is insufficient to impugn a criminal conviction" and "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350, 100 S. Ct. at 1719. "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S. Ct. 1237, 1244 n.5, 152 L. Ed. 2d 291 (2002). Ausler argues that he need not show prejudice, but even if that were true, he would still be required to show adverse effect. The Eighth Circuit has explained:

> "Adverse effect" is not the equivalent of prejudice. [*Cuyler*, 446 U.S.] at 349-50, 100 S. Ct. 1708. To demonstrate adverse effect, [a defendant] must identify "some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." *United States v. Flynn*, 87 F.3d 996, 1001 (8th Cir. 1996). "'Effect on representation' mean[s] that the conflict caused the attorney's choice, not that the choice was prejudicial in any other way." *McFarland v. Yukins*, 356 F.3d 688, 705 (6th Cir. 2004).

*Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004). Ausler's claims fail under any test. His claim that his conviction must be set aside because Jesse had a conflict of interest is without merit. Ausler's first three claims are all without merit.

## II.

Ausler next argues that he did not receive effective assistance of counsel because Jesse did not file a motion to suppress the drugs seized from the rental car that he was driving when he was

13

arrested and the statement that he allegedly made to the police, nor did he object to irregularities in discovery or raise the issue on appeal.

The evidence established that Ausler was speeding and weaving across the center line. The officers stopped the vehicle because of these traffic violations. That stop was lawful. *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998) ("[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator."). After the officers stopped him, Ausler told him that his name was Mondrel Ellis and gave a birthdate and driver's license number, all of which were determined to be false. The facts regarding the search of the vehicle, the statement, and the information allegedly withheld were all developed during trial, so the trial transcript contains ample information from which the Court can assess whether Jesse was ineffective for failing to file a suppression motion and failing to raise the issues pertaining to discovery. The Court has no hesitation in concluding that, from a review of the transcript, Jesse was not ineffective. Jesse's performance did not fall below an objective standard of reasonableness, nor is there any reason to believe that it would have affected the outcome of the case if he had filed a suppression motion or made an issue regarding the alleged defects in discovery. *See Strickland v. Washington*, 466 U.S. 668, 687, 103 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The evidence at trial established that Ausler was transporting bricks of cocaine. Those bricks were in plain view and were recognized as bricks of cocaine by the arresting officers. Ausler gave permission to search the car. Even though permission had been given, the arresting officers called for a drug dog, who alerted on the passenger side of the vehicle where the bricks were located. In light of these facts, a motion to suppress would have been denied. *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005).

The discovery issue related to a gray sweat jacket that the officer said covered a portion of the bricks of cocaine. That item was not placed on the inventory of what was in the car, nor was it provided to defense counsel. At trial, Ausler's lawyer also made an issue of the fact that an arresting officer had prepared an affidavit to submit to a local judge, but the affidavit was not provided to him in discovery. The officer testified that the gray sweat jacket was left in the vehicle. There is no reason to believe that the presence of the gray sweat jacket would have altered the outcome of the case. *United States v. O'Conner*, 64 F.3d 355, 358 (8th Cir. 1995). The affidavit presented by the arresting officer to the local judge is not in evidence, but there is no reason to believe that it contained exculpatory evidence and so would not fall within the holding of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963).

Ausler says that a Jencks Act violation "might have occurred" in this case, but nothing in the record supports the conclusion that a Jencks Act violation actually occurred. He offers nothing more than speculation that a Jencks Act violation may have occurred. *United States v. Vieth*, 397 F.3d 615, 619 (8th Cir. 2005).

In summary, Ausler has failed to meet his burden of showing that Jesse's performance was deficient under the standard of *Strickland v. Washington*. Ausler has not shown that Jesse's performance was below an objective standard of reasonableness nor that he was prejudiced by an alleged failure on Jesse's part. Ausler's claim that he was denied effective assistance of counsel is without merit.

### III.

Ausler also argues that *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005),

should be applied retroactively, but his counsel appropriately acknowledges that the Eighth Circuit has stated that *Blakely* and *Booker* do not apply retroactively on collateral review. *See Never Misses a Shot v. United States*, 413 F.3d 781 (8th Cir. 2005).

As noted above, Ausler raises 13 points pro se. The Court has considered each of those points and finds them to be without merit and, for the most part, procedurally defaulted because they were not raised on direct appeal.

## CONCLUSION

Jason Jerrel Ausler's petition pursuant to 28 U.S.C. § 2255 to vacate or set aside his conviction and sentence is DENIED. Document #121. A Judgment dismissing Ausler's petition will be entered separately.

DATED this 14th day of May, 2007.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE